# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**RUTH HAMPTON**  **CIVIL ACTION**

**VERSUS**  **No. 25-2355**

**FAMILY DOLLAR, INC., ET AL.**  **SECTION I**

## ORDER AND REASONS

This case is a personal injury action arising from injuries that plaintiff Ruth Hampton ("plaintiff") sustained as a result of the allegedly hazardous conditions in the parking lot of a Family Dollar location in New Orleans maintained by Family Dollar, Inc. and/or Family Dollar Stores of Louisiana, LLC (collectively, "defendants").[1] Defendants removed this action to federal court on November 19, 2025,[2] asserting diversity jurisdiction as the basis for federal subject matter jurisdiction.[3] Shortly thereafter, plaintiff filed a motion[4] to remand, and defendants filed a response[5] in opposition.

Plaintiff does not contest that diversity jurisdiction exists.[6] Rather, the sole dispute between the parties is whether defendants timely removed this action.[7] Having reviewed the parties' briefs and relevant caselaw, the Court remands the above-captioned matter because it finds that defendants' removal was untimely.

---

[1] *See generally* R. Doc. No. 1-1.
[2] *See* R. Doc. No. 1; *see also* R. Doc. No. 6-3, at 4; R. Doc. No. 10, at 6.
[3] R. Doc. No. 1, at 2.
[4] R. Doc. No. 6.
[5] R. Doc. No. 10.
[6] *See generally* R. Doc. No. 6.
[7] *See* R. Doc. Nos. 6, 10.

I.   LAW AND ANALYSIS

"Under the federal removal statute, a civil action may be removed from a state court to a federal court on the basis of diversity." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016); 28 U.S.C. §§ 1441(a) and 1332. For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, exclusive of interests and costs, and there must be complete diversity between the plaintiff and all defendants. *See* 28 U.S.C. § 1332(a).

Title 28, United States Code, Section 1446 dictates the procedures for removal of civil actions to federal court. As it pertains to the timeliness of removal, § 1446(b) requires that:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

§ 1446(b)(1). In situations where "the case stated by the initial pleading is not removable," § 1446(b)(3) permits that:

> a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper from which it may first be ascertained that the case is one which is or has become removable*.

§ 1446(b)(3) (emphasis added). As the Fifth Circuit summarized in *Mumfrey v. CVS Pharmacy, Inc.*:

> Restated, if the initial pleading sets forth a claim that triggers the removal clock, the defendant must file notice of removal within thirty

> days of receiving it. If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable.

719 F.3d 392, 397–98 (5th Cir. 2013). The removing party carries the burden of establishing that removal was proper and timely. *See Shawl v. Freedom Specialty Ins. Co.*, No. 24-2125, 2025 WL 2267719, at *2 (E.D. La. Aug. 8, 2025) (Long, J.) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "Any ambiguities are construed against removal and in favor of remand to state court." *Mumfrey*, 719 F.3d at 397.

Plaintiff brought her action in Louisiana state court against defendants on August 19, 2025,[8] and defendants were served with plaintiff's state court petition on September 17, 2025, and September 18, 2025, respectively.[9] Consistent with Louisiana law, plaintiff's petition did not allege a specific amount of damages.[10] *See* LA. CODE CIV. PROC. art. 893. Instead, plaintiff's petition alleged categories of general damages she was pursuing, such as "past, present, and future" physical and mental "pain and suffering," "medical expenses," and "loss of enjoyment of life," among other damages.[11] Neither party argues, nor could they, that service of plaintiff's state court petition triggered the 30-day removal clock of § 1446(b)(1).[12] There were no quantifiable damages in the petition from which defendants could ascertain that the

---

[8] R. Doc. No. 6-3, at 2; R. Doc. No. 10, at 1.
[9] R. Doc. No. 6-3, at 2, 4; R. Doc. No. 10, at 3.
[10] R. Doc. No. 1-1.
[11] *See id.* at 1.
[12] *See generally* R. Doc. Nos. 6, 10.

3

amount in controversy exceeded the jurisdictional requisite for diversity jurisdiction. *See* 28 U.S.C. § 1332(a); *Mumfrey*, 719 F.3d at 397–98, 400.

In fact, both plaintiff and defendants contend that § 1446(b)(3) applies.[13] Their disagreement lies in what "other paper" triggered the start of the 30-day period within which removal must be filed.

"For a document to be considered 'other paper' under § 1446(b), it 'must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction.'" *Fernando Garcia v. MVT Servs., Inc.*, 589 F. Supp. 2d 797, 803 (W.D. Tex. 2008) (quoting *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000)). The Fifth Circuit has confirmed that correspondence and discovery materials exchanged by the parties can constitute "other paper[s]" that confer the requisite notice and trigger the removal clock. *See id.* (citing *Addo*, 230 F.3d at 761).

In *Bosky v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002), the Fifth Circuit established that "the information supporting removal" in such other paper "must be '*unequivocally clear and certain*' to start the time limit running for a notice of removal under" § 1446(b)(3). *See id.* at 211 (emphasis added). It found that this "clear[] threshold promotes judicial economy" and "should reduce 'protective' removals by defendants faced with an equivocal record." *Id.*

Plaintiff avers that information about the amount in controversy was conveyed to defendants' counsel through a series of communications, medical records, and

---

[13] R. Doc. No. 6-3, at 4; R. Doc. No. 10, at 3.

billings that were "other paper[s]" sufficiently unequivocally clear and certain to trigger the 30-day removal clock in § 1446(b)(3).[14] According to plaintiff, these other papers gave defendants notice that the case was removable by September 25, 2025.[15]

Specifically, plaintiff explains that, prior to filing her lawsuit in state court, plaintiff's counsel sent defendants' counsel a letter indicating that she had been "recommended for shoulder surgery" and that surgery would be "scheduled on the next available date."[16] This correspondence also requested that defendants "advise immediately" if they wanted to schedule an independent medical examination ("IME") of plaintiff prior to this to-be-scheduled surgery.[17]

Next, plaintiff's counsel sent defense counsel an email on September 25, 2025, confirming that plaintiff's "shoulder and ankle surgery" was "set" for October 31, 2025, and again asking defendants to "let [them] know immediately" whether they would like to conduct an IME prior to this surgery.[18] The email also stated that the surgery was "a medical necessity and [would] not be postponed."[19]

Plaintiff then explains that defendants' counsel responded by email the next day, September 26, 2025. In that email, defendants' counsel confirmed that it had "received [the] notice of [plaintiff's] upcoming surgeries,"[20] and indicated that it

---

[14] *See* R. Doc. No. 6-3, at 4–9.
[15] *See id.* at 6.
[16] *Id.* at 2; *see also* R. Doc. No. 6-4 (August 12, 2025, correspondence).
[17] R. Doc. No. 6-4, at 1.
[18] R. Doc. No. 6-3, at 2–3; R. Doc. No. 6-7, at 1. The Court notes that nowhere in the parties' briefs is it confirmed that the October 31st surgery indeed occurred on October 31st.
[19] R. Doc. No. 6-7, at 1.
[20] R. Doc. No. 6-9, at 1–2.

5

"intend[ed] to have an IME done PRIOR to her surgery."[21] Defendants' counsel also asked in this email that plaintiff's counsel "forward all medical records and billings associated with [plaintiff's] treatment and claims."[22] Plaintiff's counsel provided defense counsel with the requested records that same day.[23]

As is relevant to the present motion, the billing-related records provided by plaintiff's counsel included: a surgery quote for her right ankle, which totaled $9,082.00;[24] a surgery quote for her shoulder, which totaled $19,646.00;[25] an ultrasound quote for her right ankle, which totaled $850.00;[26] and a bill for shoulder X-rays and reports, which totaled $990.00.[27] The surgery quotes do not include costs and fees for anesthesia.[28] Plaintiff's medical records also indicated, in a visit note of July 29, 2025,[29] that she had previously undergone surgery on her right ankle related to her fall in the Family Dollar parking lot.[30]

It is plaintiff's position that the September 25th email correspondence confirming her shoulder and ankle surgeries was sufficient to trigger the removal clock because it "clearly demonstrate[d]" to defendants that "the potential value of

---

[21] *Id.* at 2 (emphasis in original).
[22] *Id.*
[23] *See* R. Doc. Nos. 6-10, 6-11.
[24] R. Doc. No. 6-14, at 1.
[25] *Id.* at 3.
[26] *Id.* at 6.
[27] *Id.* at 9.
[28] *Id.* at 1, 3.
[29] *Id.* at 10.
[30] *Id.* at 10–11.

6

the case ha[d] increased."[31] Alternatively, plaintiff argues that defendants had notice that this case had become removable by September 26th, because the medical records indicated that plaintiff had already "incurred costs related to [her] previous surgery" and "future surgery costs alone" would total at least $30,000.00.[32] According to plaintiff, this information was "clearly available in the documents provided" to defendants and should have put defendants on notice that the case was removable.[33] Therefore, defendants' removal of this case fifty-five or, alternatively, fifty-four, days later was untimely.[34]

Defendants, in contrast, contend that the 30-day removal clock was not triggered until October 27, 2025, when plaintiff returned her response to defendants' request for admissions.[35] Within her response, plaintiff stated that "the amount of damages in controversy exceeds $75,000.00."[36] Plaintiff also therein declined to "remit, waive, and relinquish in State Court any award of damages in excess of $75,000.00, exclusive of interests and costs."[37] Defendants urge that it is this "other paper" that opens the 30-day removal window and that, consequently, their removal on November 19, 2025, less than thirty days later, was timely.[38]

---

[31] R. Doc. No. 6-3, at 5–6 ("Plaintiff's September 25, 2025 correspondence was a voluntary act that gave the Defendants notice of the changed circumstances (i.e., Ms. Hampton will indeed be undergoing the recommended surgeries and that they are scheduled on October 31, 2025) which now support federal jurisdiction.").
[32] R. Doc. No. 6-3, at 7.
[33] *Id.*
[34] *Id.* at 8.
[35] R. Doc. No. 10, at 2.
[36] R. Doc. No. 1-3, at 2.
[37] *Id.*
[38] R. Doc. No. 10, at 2.

7

Courts following *Bosky* have found that other papers "describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but which do not show unequivocally that the requirement is met, are insufficient to trigger the removal clock." *Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at *2 (E.D. La. Aug. 13, 2014) (Barbier, J.); *Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011) ("The necessity of independent research to ascertain the amount in controversy shows the discovery responses were not 'unequivocally clear and certain.'" (cleaned up)). Indeed, "if a defendant has to analyze and dissect medical treatment records to divine whether the nature and cause of a plaintiff's injuries satisfy the amount in controversy requirement, then those papers do not suffice to trigger the 30 day time period." *Shehadeh v. Bergeron*, No. 19-228, 2020 WL 9720423, at *5 (M.D. La. Feb. 24, 2020), *report and recommendation adopted*, No. 19-228, 2020 WL 9720158 (M.D. La. Mar. 10, 2020).

To the extent that plaintiff expected defendants to extract from her medical records the fact that she had undergone surgery in January 2025—without any guidance from plaintiff's counsel that such surgery had occurred and was reflected in those medical records—and, from there, infer that the jurisdictional amount was reached, jurisprudence counsels against imposing such an expectation.[39] *See, e.g., id.*

However, the Court finds that plaintiff's other potential damages—those discernable from plaintiff's surgery quotes, medical bills, and state petition—were

---

[39] R. Doc. No. 6-3, at 7–8 ("Defendants should have ascertained that this case is one that would be removable.").

unequivocally clear and certain to defendants to trigger § 1446(b)(3)'s 30-day removal clock. As of September 26th, plaintiff had provided defendants with notice of at least $30,568 in quantifiable medical damages, notice of additional costs and fees associated with those medical expenses, and notice that she was seeking additional general damages arising from the incident.[40] *See Medrano v. KLLM Transportation Servs. LLC*, No. 21-581, 2022 WL 17833284, at *5 (M.D. La. Aug. 30, 2022) (finding that itemized damages "with the aid simple mental calculations" are sufficiently clear to reveal the amount in controversy); *Shawl,* 2025 WL 2267719, at *3 ("The amount in controversy 'concerns what the plaintiff is claiming,' 'not whether the plaintiff is likely to win or be awarded everything he seeks.'" (quoting *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015)).

This is not a situation where the quantifiable damages were so low or the expectation of other damages so unknown that defendants were unable to ascertain that the amount in controversy exceeded the minimum jurisdictional amount of $75,000 by September 26th. *Cf. Cole*, 416 F. App'x at 440 (holding insufficiently clear and certain to trigger § 1446(b)(3)'s removal clock the plaintiff's medical bills totaling "less than $3,400" when coupled with medical records demonstrating that "the CT-scan, X-ray, and neuropsychological assessment reported no abnormalities; and the treating physician recommended simple home remedies for [the individual's] recovery—the application of a cool compress to the bruised area and an over-the-

---

[40] Defendants do not address plaintiff's claim for general damages anywhere in its response. *See* R. Doc. No. 10.

counter pain reliever"); *Smith v. Avina,* No. 22-561, 2022 WL 17347792, at *4 (M.D. La. Nov. 10, 2022), *report and recommendation adopted*, No. 22-561, 2022 WL 17345770 (M.D. La. Nov. 30, 2022) (holding that the 30-day removal clock was not triggered where the quantifiable damages provided did not reach the jurisdictional threshold and, "[b]eyond the quantifiable measures of damages provided, the discovery responses only provide that the amount of damages sought for the remaining categories are 'unknown'").

The Court finds that the 30-day period for removal began when plaintiff's counsel confirmed plaintiff's surgery and sent the accompanying medical bills and quotes. *Cf. Shawl,* 2025 WL 2267719, at *3 (finding the plaintiff's email confirming that the plaintiff had undergone shoulder surgery and lumbar radiofrequency ablation was sufficient to trigger the 30-day removal clock).

For these reasons, the Court agrees with plaintiff that removal was untimely. Accordingly,

**IT IS ORDERED** that plaintiff's motion to remand is **GRANTED** and that the above-captioned case is **REMANDED** to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, February 11, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**